**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TOMMY PHAM,** *on Behalf of Himself and All Others Similarly Situated*, Plaintiff, | : : : : | **CIVIL ACTION** |
| v. | : : | NO.  17-cv-2894 |
| **QUADGEN WIRELESS SOLUTIONS, INC.,** Defendant. | : : : : | |

**REPORT AND RECOMMENDATION**

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                                      **March 3, 2020**

Presently before the Court is the Parties' Joint Motion for Approval of Settlement under the Fair Labor Standards Act ("FLSA") and the North Carolina Wage and Hour Act ("NCHWHA"). (Joint Motion at 1, ECF No. 44). The Honorable C. Darnell Jones referred this matter to me for a Report and Recommendation. For the reasons set forth below, I respectfully recommend that the Parties' Motion be GRANTED as outlined herein. I recommend the District Court approve the Settlement Agreement, except for portions of Section A and Subsection 1 in the Release Section that are unrelated to the claims raised in the Complaint.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

On June 27, 2017, Plaintiff Tommy Pham ("Plaintiff") filed a complaint against Defendant Quadgen Wireless Solutions Inc. ("Defendant") on behalf of himself and all similarly situated hourly workers ("Class Members") employed by Defendant. (Pl.'s Comp. at ¶¶ 47-53, ECF No. 1). Plaintiff alleges Defendant did not pay Plaintiff and Class Members overtime pay to which they are entitled under the Fair Labor Standards Act ("FLSA") and the North Carolina

Wage and Hour Act ("NCHWHA") because Defendant misclassified, and continues to misclassify, them as exempt from overtime. (Pl.'s Comp. at ¶ 44, ECF No. 1).

In his complaint, Plaintiff asserts that from approximately May 2016 to October 2016, he worked for Defendant as a Field Technician. (Pl.'s Comp. at ¶ 20, ECF No. 1). According to Plaintiff, Field Technicians perform manual labor tasks on cellular towers; they install and troubleshoot equipment in the towers according to strict guidelines. (*Id.*). Plaintiff performed his services for Defendant in Texas and North Carolina and was paid a salary only. (*Id.*). Plaintiff alleges that he and the Class Members regularly worked more than 40 hours in a workweek, oftentimes averaging 60 hours each workweek. (*Id.*). Plaintiff also contends that, if he did not work the required hours by Defendant, Defendant would reduce his salary. (*Id.*). Field Technicians are classified as exempt from overtime pay by Defendant, thereby precluding Plaintiff and the Class Members from overtime pay. (*Id.*). Plaintiff asserts that he and the Class Members are entitled to pay for each hour worked in excess of 40 hours at a rate equal to one- and one-half times the regular rate of pay. (Pl.'s Comp. at ¶ 64, ECF No. 1). Defendant denied all of Plaintiff's claims, and further disputed any existence of "Class Members" in the action and denied the action as appropriate treatment as a class or collective action. (Def.'s Answer at ¶¶ 63-64, ECF No. 10).

On March 16, 2018, the Court granted the Parties' Joint Stipulation for Conditional Certification. (Joint Motion at 1, ECF No. 44). The Court certified the following classes:

> Class A:   All current and former Field Technicians who worked more than 40 hours for at least one workweek for Quadgen Wireless Solutions, Inc. from October 31, 2014 to the present that were classified as exempt from overtime.
>
> Class B:   All current and former Field Engineers who worked more than 40 hours for at least one workweek for

> Quadgen Wireless Solutions, Inc. from October 31, 2014 to the present that were classified as exempt from overtime.

(Joint Motion at 1-2, ECF No. 44). On September 25, 2019, the Parties appeared before me for a Settlement conference, (Order, ECF No. 39; Minute Sheet, ECF No. 43); and ultimately, the Parties reached a settlement. (Joint Motion at 2, ECF No. 44). The Parties subsequently filed a Joint Motion for Approval of Settlement, attaching a copy of the Confidential Release and Settlement Agreement ("Settlement Agreement") and Trends in Wage and Hour Settlements: 2015. (*See* Joint Motion for Settlement, Exhibit "A" & "B", ECF No. 44). The Honorable C. Darnell Jones II referred the Motion to me for a Report and Recommendation. (Order, ECF No. 46).

## II.   TERMS OF THE AGREEMENT

The Parties' proposed Settlement Agreement provides that Defendant will pay a total of $400,000 to Plaintiff, Class Members and Plaintiffs' counsel. (Settlement Agreement at 2, ECF No. 45). The Settlement Agreement contemplates that Plaintiff and Class Members will receive a combined total of $228,081.59, and Plaintiff's counsel will receive $171,918.41 in attorney's fees and case expenses. (*Id.*). Further, the agreement includes incentive payments for Plaintiff and certain Class Members; Plaintiff will receive $10,000 as the Class Representative and each Class Member who appeared for a deposition will receive $2,000. (*Id.*) In exchange, Plaintiff would release the following non-exhaustive list of claims:

> All claims under the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964; the Civil Rights Act of 1871 and 1991; Section 503 and 504 of the Rehabilitation Act of 1973; the Americans with Disabilities Act; the Family and Medical Leave Act; the Employee Retirement Income Security Act, the Lilly Ledbetter Fair Pay Act of 2009, all other legally waivable claims under any federal, state or

> local statute, regulation, or ordinance, all claims based upon any express or implied contracts, all common law claims now or hereafter recognized, and all claims for relief, including without limitation, minimum, overtime, or other wages, retaliation damages, unpaid costs, penalties (including, but not limited to, late payment penalties, wage statement or other record keeping penalties, and meal or rest break penalties), wage deductions, spread of hours pay, premium pay, liquidated damages, punitive damages, interest, attorney's fees, litigation costs, restitution, and equitable relief.

(Settlement Agreement at 3, ECF No. 45). The Parties agreed to self-administer the Settlement. Defendant will mail individual settlement checks to the Class Members for the amounts as listed on the table attached to the Settlement. (*Id.* at 8). Each settlement check will contain the following release language:

> I understand and acknowledge that by cashing or depositing this check, I will be forever waiving and releasing (i.e., giving up) any and all claims under the Fair Labor Standards Act ("FLSA"), 29 USC §§ 201 et seq., as well as any state and/or local wage and hour and common law claims related to unpaid wages, benefits, or any claim related to my compensation that were brought or could have been brought in Tommy Pham et al. v. QuadGen Wireless Solutions, Inc. CA No. 2:17-cv-0894-LDD, which were pending in the U.S. District Court for the Eastern District of Pennsylvania. I also understand, acknowledge, and agree that this means I will not be able to sue QuadGen Wireless Solutions, Inc. for these claims once I cash or deposit the check.

(*Id.* at 9).

### III. LEGAL STANDARD

The FLSA institutes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract. *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013)). When employers violate the FLSA guarantees, codified at 29 U.S.C. §§ 206 and 207, employers may be liable to employees "in the amount of their unpaid minimum wages, or their unpaid overtime

compensation, as the case may be, and in an additional equal amount as liquidated damages." *Id*. (citing 29 U.S.C. § 216(b)).

FLSA claims may be settled by employees in two ways: (1) supervision by the Secretary of the Department of Labor, pursuant to 20 U.S.C. § 216(c), or (2) approval by the district court, pursuant to 29 U.S.C. § 216(b). *Adams v. Bayview Asset Mgmt., LLC*, 11 F.Supp.3d 474, 476 (E.D. Pa. 2014) (citing *Lynn's Food Stores Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)). The Third Circuit has not articulated a standard for analyzing FLSA settlements, but District courts routinely look to the *Lynn's Food Stores* standard when a party seeks judicial approval of an FLSA settlement. *See, e.g., Howard v. Phila. House. Auth.*, 197 F.Supp.3d 773, 776 (E.D. Pa. 2016) (court applied *Lynn's Food* standard); *Bettger v. Crossmark, Inc.*, No. 13-2030, 2015 WL 279754, at *3-5 (M.D. Pa. 2015) (same); *Mabry v. Hildebrandt*, No. 14-5525, 2015 WL 5025810, at *3 (E.D. Pa. 2015).

Under the *Lynn's Food* standard, "[w]hen parties present to the district court a proposed settlement, the district court may enter a stipulated judgment if it determines that the compromise reached 'is a fair and reasonable resolution of a bona fide dispute over FLSA provisions' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" *Cuttic v. Crozer-Chester Med. Ctr.*, 868 F.Supp.2d 464, 466 (E.D. Pa. 2012) (quoting *Lynn's Food*, 679 F.2d at 1354); *see also Lyons v. Gerhard's Inc.*, No. 14-06693, 2015 WL 4378514, at *3 (E.D. Pa. 2015) (applying *Lynn's Food* standard). The Court determines if the settlement concerns a "bona fide dispute;" if it does, the Court will conduct a two-part fairness inquiry to ensure that (1) the settlement is fair and reasonable for the employee(s), and (2) the agreement furthers the FLSA's implementation in the workplace. *See Howard*, 197 F.Supp.3d at 777; *McGee v. Ann's Choice, Inc.*, No. 12-2664, 2014 WL 2514582, at *2 (E.D. Pa. 2014).

**IV.    DISCUSSION**

Using this framework, the Court analyzes the proposed Settlement Agreement here.  I respectfully recommend the District Court approve the Settlement Agreement, except for certain portions of the Release of Claims in Section A and Subsection 1of the Settlement Agreement.  The Settlement Agreement is a fair and reasonable compromise of a bona fide dispute and furthers the FLSA's purpose.  However, certain provisions under the Release are overly broad, and I therefore recommend the District Court approve the Settlement Agreement, except for the certain waiver provisions that extend beyond Plaintiff's FLSA-based claims in his Complaint.

**A.     The Settlement Resolves a Bona Fide Dispute**

A dispute is "bona fide" where it involved "'factual issues' rather than 'legal issues such as the statute's coverage and applicability.'"  *Creed v. Benco Dental Supply Co.*, No. 12-01571, 2013 WL 5276109, at *1 (M.D. Pa. 2013) (quoting *Lignore v. Hosp. of Univ. of Pa.*, No. 04-5735, 2007 WL 1300733, at *3 (E.D. Pa. 2007)).  A proposed settlement resolves a bona fide dispute where the settlement's terms "reflect a reasonable compromise over issues, such as, FLSA coverage . . . that are actually in dispute" and are not a "mere waiver of statutory rights brought about by an employer's overreaching."  *Lynn's Food*, 679 F.2d at 1355.  In other words, "for a bona fide dispute to exist, the dispute must fall within the contours of the FLSA and there must be evidence of the defendant's intent to reject or actual rejection of that claim when it is presented."  *Kraus v. PA Fit II, LLC*, 155 F.Supp.3d 516, 530 (E.D. Pa. 2016).

The dispute in this case concerns Defendant's misclassification of Plaintiff and the Class Members as exempt employees, thereby denying them overtime pay at the rate of one and one-half their regular rates of pay when their hours exceed(ed) forty (40) hours in a workweek.  (Pl.'s Compl. at ¶¶ 42-44, ECF No. 1).  Plaintiff argues that he and the Class Members were not

exempt from overtime because their duties did not satisfy any exemption.  (Joint Motion at 4, ECF No. 44).  Defendant countered that the Plaintiff and Class Members were exempt under the administrative exemption and/or computer professional exemption.  (*Id.*).  Defendant also denied that this action is appropriately categorized as a class and/or collective action, or that is should be maintained on behalf of any persons other than Plaintiff.  (Def.'s Answer, at ¶ 1).  Whether Defendant misclassified Plaintiff and the Class Members, rendering them exempt from overtime pay, are disputed "factual issues."  Therefore, I conclude the Settlement Agreement reflects a "reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching."  *Brumley v. Camin Cargo Control, Inc.*, No. 08-1798, 2012 WL 1019337, at *7 (D.N.J. 2012) (quoting *Lynn's Food*, 679 F.2d at 1354).

      **B.**      **Fairness of the Proposed Settlement**

The Court must next determine whether the Settlement Agreement is fair and reasonable.  *Howard*, 197 F.Supp.3d at 777.

The Court concludes that a presumption of fairness is warranted here.  A presumption of fairness attaches to a proposed class action settlement when the reviewing district court determines that: "(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected."  *In re Warfarin Sodium Antitrust Litigation*, 391 F.3d 516, 535 (3d Cir. 2004).

Here, all four factors are met.  First, the settlement negotiations occurred at arm's length at a nearly day-long settlement conference over which I presided.  (ECF Nos. 39, 43); *Gates v. Rohm & Haas Co.*, 248 F.R.D. 434,444 (E.D. Pa. 2008) (deciding that negotiations occurred at arm's length when the parties negotiated for "two full days of mediation before an experienced

mediator"). Second, the Parties engaged in extensive discovery. (Joint Motion at 2, ECF No. 44). Before the settlement conference, the Parties "exchanged written discovery, produced nearly 4,000 pages of records, and completed eight depositions." (*Id.*). Third, the attorneys have vigorously prosecuted and/or defended similar claims for many years. (Joint Motion at 10, ECF No. 44). "Both sides have had considerable experience in prosecuting defending, and settling federal and state wage and hour claims . . ." (*Id.*). Finally, there are no objections to the settlement. (Joint Motion at 11, ECF No. 44). Accordingly, the proposed Settlement Agreement is entitled to a presumption of fairness.

The Court concludes that the settlement is fair and reasonable. "In evaluating the fairness of a settlement in an FLSA collective action, the court in the Third Circuit have utilized the standards set forth in *Girsh v. Jepsen*, 521 F.2d 153, 157-58 (3d Cir. 1975)." *Lovett v. Connect America.com*, No. 14-2596, 2015 WL 5334261, at *3 (E.D. Pa. Sept. 14, 2015); *see also Brumley*, 2012 WL 1019337, at *4-5. The *Girsh* factors include: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) state of the proceedings and the amount of the discovery completed; (4) risks of establishing liability; (5) risk of establishing damages; (6) risk of maintaining the class action through trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Lyons*, 2015 WL 4378514, at *4. After analyzing the proposed Settlement Agreement using the *Girsh* factors, I conclude it is fair and reasonable.

### 1. The Proposed Settlement is Fair and Reasonable

The first *Girsh* factor "captures the probable costs, in both time and money, of continued litigation." *In re Cendant Corp. Litigatin.*, 264 F.3d 201, 233 (3d Cir. 2001). Both Parties submit that, without settlement, "Plaintiffs' counsel would have vigorously litigated the case without any promise of success and compensation." (Joint Motion at 10, ECF No. 44). The litigation lasted approximately two years. (*Id.*). The Court agrees that this settlement saves substantial amounts of time and resources. Continued litigation could also include time-consuming and expensive post-trial motions and appeals. Therefore, the first *Girsh* factor weighs in favor of approving the settlement.

The second *Girsh* factor "attempts to gauge whether members of the class support the settlement." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 318 (3d Cir. 1998). To determine whether class members support the settlement, "courts look to the number and vociferousness of the objectors." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995). Here, there are no negative reactions to the settlement. No one objected to the settlement. "The terms of the settlement have been approved by Plaintiff, his counsel, Defendant, and Defendant's counsel." (Joint Motion at 11, ECF No. 44).

The third *Girsh* factor "captures the degree of case development that class counsel have accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiation." *Gen. Motors*, 55 F.3d at 813. Here, the Parties engaged in extensive discovery – they "exchanged written discovery, produced nearly 4,000 pages of records, and completed eight depositions." (Joint Motion at 2, ECF No. 44). Specifically, Plaintiff deposed Defendant's corporate representative and one of

Plaintiff's supervisors. (*Id*.). Defendant deposed Plaintiff and five opt-in Plaintiffs. (*Id*.). Defendant provided the relevant pay records for the allotted time period and damages were calculated appropriately. (*Id*.). Accordingly, the facts were well-developed and the Parties were well-informed before reaching settlement.

The fourth and fifth *Girsh* factors "survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *Prudential*, 148 F.3d at 319. This factor favors approving settlement. Continued litigation came with risk, and the Class Members were "at a great risk of nonpayment" and "[h]ad the case not settled, Plaintiff's counsel would have vigorously litigated the case without any promise of success and compensation." (Joint Motion at 10, ECF No. 44). Furthermore, under Defendant's theory of the case, the Class Members would be owed close to zero in damages award. (Joint Motion at 9, ECF No. 44). Therefore, the fourth and fifth *Girsh* factors favor approving settlement because the certainty of immediate payment alleviates the risks. *Cf. Auto. Refinishing Paint*, 617 F.Supp.2d at 343 (noting that "litigation is always inherently unpredictable.").

The sixth *Girsh* factor considers the risks of maintaining a class action throughout the litigation. This factor weighs neutral, as no Rule 23 class was certified, only an FLSA collective class. (Stipulation and Order, ECF No. 18).

The seventh *Girsh* factor evaluates "whether the defendants could withstand a judgment for an amount significantly greater than the Settlement." *Cendant*, 264 F.3d at 240. In this case, there is no indication one way or the other that Defendant could withstand a judgment greater than the Settlement. The Court concludes that this factor is neutral.

10

The last two *Girsh* factors "analyze the settlement in light of the best and worst case scenario." *Auto. Refinishing*, 617 F.Supp.2d at 344. Specifically, the factors assess "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing . . . compared with the amount of the proposed settlement." *Prudential*, 148 F.3d at 322. Here, almost $230,000 is available for distribution to Plaintiffs, a figure that provides compensation under both the two-year and three-year limitations period for unpaid overtime wages while giving credit for 10 hours of overtime per week. (Joint Motion at 4, ECF No. 44). Given the risks of litigation described above, I conclude that this is reasonable. *See Carney v. Travelers Aid Society of Philadelphia*, 2020 WL 703684, at *3 (E.D. Pa 2020) (court concluded the compensation terms of the settlement agreement are fair and reasonable). Therefore, the last two *Girsh* factors favor approving the settlement.

Based on the foregoing, the Court concludes the proposed compensation terms paid to Plaintiff and Class Members are fair and reasonable. *See, e.g., Nwogwugwu v. Spring Meadows at Lansdale, Inc.*, No. 16-2663, 2017 WL 2215264, at *3 (E.D. Pa. 2017) (concluding compensation terms were fair and reasonable where defendant paid full amount due).

### 2. The Method of Administration is Fair and Reasonable

The Court also concludes that the Parties have agreed on a fair and reasonable notice plan to administer the settlement. *See Fein v. Ditech Financial, LLC*, 2017 WL 4284116, at *3-13 (court concluded settlement was fair and reasonable which included approval of settlement checks). Under the Settlement Agreement, within 30 days of approval by the Court, Defendant will mail individual settlement checks to Plaintiff and Class Members. (Joint Motion at 6, ECF No. 44). The release of claims by Plaintiff and Class Members is limited to wage and hour claims only—not a broad release of all imaginable claims. (*Id.*). The release will be printed on

the back of the settlement checks. (*Id.*). Depositing the settlement checks will effectuate the release of the claims. (*Id.*); *see e.g., Lazarin v. Pro Unlimited, Inc.*, No. C11-03609 HRL, 2013 WL 3541217 (N.D. Cal. 2013) (court approved final settlement of FLSA wage action and approved releasing FLSA claims through check cashing); *Franco v. Ruiz Food Products, Inc.*, No. 1:10-CV-02354-SKO, 2012 WL 5941801, at *24 (E.D. Cal. 2012) (court approved settled of collective claim and approved released FLSA claims by endorsing settlement checks); *Seghroughni v. Advantus Rest., Inc.*, No. 8:12-CV-2000-T-23TBM, 2015 WL 390329, at *1 (M.D. FL 2015); *Lizondro-Garcia v. Keft LLC*, No. 12 CIV. 1906 HBP, 2014 WL 4996248, at *2 (S.D.N.Y. 2014) (court concluded that "defendants will not be released from the FLSA claims of FLSA collective members who do not endorse their settlement checks"). Accordingly, this process is fair and equitable to all Parties and eliminates the need for a separate claim form.

### 3. The Requested Attorney's Fees are Fair and Reasonable

The Court lastly concludes that the Parties have agreed to fair and reasonable attorney's fees. *See McGee v. Ann's Choice, Inc.*, 2014 WL 2514582, at *4-*7 (court concluded proposed attorney's fees were fair and reasonable).

"Under the FLSA, the Court 'shall, in addition to any judgment awarded to the plaintiff . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.'" 29 U.S.C. § 216(b). "The Court is required to 'articulate' the basis for a fee award." *Kraus v. PA Fit II, LLC*, 155 F.Supp.3d at 534. "Percentage of recovery is the prevailing method used by courts in the Third Circuit for wage and hour cases." *Id.* at 13 (quoting *Keller v. TD Bank*, No. 12-5054, 2014 WL 5591033 at *14 (E.D. Pa. 2014)); *Clarke v. Flik Int'l Corp.*, No. 17-1915, 2020 WL 747067, at *3 (D.N.J. Feb. 14, 2020) ("In the Third Circuit, courts predominantly use a percentage-of-recovery method to assess attorneys' fees in wage and hour

cases where a common fund is established."). This method awards a fixed portion of the settlement fund to counsel. *Id*. The Court must consider the following factors when evaluating the reasonableness of awarded attorney's fees under the percentage-of-recovery method:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Id*. (quoting *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000)). Each case must be evaluated on its own factual merits and sometimes, one factor may outweigh the rest. *Id*. at 14. In the Third Circuit, the percentage of recovery awards to counsel in FLSA common fund cases ranges from roughly 20-45%. *Mabry v. Hildebrandt*, 2015 WL 5025810, at *4 (E.D. Pa. 2015). *See Rouse v. Comcast Corp.,* 2015 WL 1725721, at *12 (E.D. Pa. 2015) (allowing percentage-of-recovery for attorney's fees at roughly 35%); *Lyons,* 2015 WL 4378514, at * 5 (same, 44%); *Leap v. Yoshida,* 2015 WL 619908, at *4 (E.D. Pa. 2015) (same, 33%); *Keller,* 2014 WL 5591033, at *14 (same, 20%); *McGee,* 2014 WL 2514582, at *4 (same, 32.7%); *In re Chickie's & Pete's,* 2014 WL 911718, at *4 (same, 28%); *Young v. Tri County Sec. Agency, Inc.,* 2014 WL 1806881, at *8 (E.D. Pa. 2014) (same, 24.8%); *Dino v. Pennsylvania,* 2013 WL 6504749, at *3 n. 1 (E.D. Pa. 2013) (same, 31%); *Brumley,* 2012 WL 1019337, at *3 (same, 33.3%); *Ripley v. Sunoco, Inc.,* 287 F.R.D. 300, 313–14 (E.D. Pa. 2012) (same, 33%); *Bredbenner,* 2011 WL 1344745 (same, 32.6%); *Williams v. Aramark Sports, LLC,* 2011 WL 4018205, at *10 (E.D. Pa. 2011) (same, 33%).

An analysis of the relevant factors under the percentage-of-recovery method shows that the attorney's fees are reasonable. *Lyons v. Gerhard's Inc.*, 2015 WL 4378514 at *5 (court held

attorney's fees were reasonable after assessing the relevant factors under the percentage-of-recovery method). The Settlement Agreement indicates that Plaintiff's counsel will receive 43% of the recovery. (Settlement Agreement at 1, ECF No. 45). Though this percentage represents the higher ranges of attorneys' fees allowed by courts in this Circuit regarding collective actions, I find the percentage reasonable. *See Lyons,* 2015 WL 4378514 at *5 (where court upheld 44% recovery percentage); *see also In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995) (court noted that "fee awards have ranged from nineteen percent to forty-five percent of the settlement fund"). The total recoverable fund is $400,000, compensating 30 current and former employees, including Plaintiff, "who were alleged to have been misclassified as exempt from overtime." (Settlement Agreement at 1, ECF No. 45). There have been no objections to the requested attorney's fees. (*See id.*); *McGee*, 2014 WL 2514582, at *5 ("The absence of any objection weighs in favor of the fee request" (quoting *BredBenner*, 2011 WL 1344745, at *20)). This litigation lasted approximately two years and included complex legal theories. (Joint Motion at 9-10, ECF No. 44); *Brumley*, 2012 WL 1019337, at *11 (approving attorneys' fees in multi-year litigation and noting that "FLSA claims and wage-and-hour law enforcement through litigation has been found to be complex by the Supreme Court and lower courts."). This matter required substantial expertise in the wage and hour field to identify the claims at issue. As the Parties noted, "many attorneys would not have understood the nuanced argument asserted, nor would have been able to discern whether the Plaintiffs even had a viable claim." (*Id*. at 10). Plaintiff's counsel has shown adequate skill and efficiency in identifying and arguing the claim, which resulted in a favorable settlement and "provided a significant benefit to the Class Members." (Joint Motion at 10, ECF No. 44); *See Altnor v. Preferred Freezer Services, Inc.*, 197 F.Supp.3d 746, (E.D. PA 2016) (court approved 45%

recovery in attorney's fees because class counsel worked efficiently to achieve a favorable result for the class). Plaintiffs' counsel also contributed significant time to this matter; they reviewed roughly 4,000 pages of discovery, "investigated the claims, engaged in significant motion practice, deposed several witnesses, retained an accounting expert, analyzed pay data, managed communication with all Class Members, and performed other work that resulted in a settlement." (*Id.*); *see also Lyons v. Gerhard's Inc.*, 2015 WL 4378514, *5 (E.D. PA 2015) (court approved 44% recovery in attorney's fees where counsel reviewed thousands of pages of discovery, conducted depositions and generally devoted substantial time to the matter).

Accordingly, considering the factors used to assess the percentage-of-recovery method, I conclude that the proposed payment of $171,918.41 in attorney's fees is reasonable.

### C. The Settlement Does Not Frustrate the Implementation of the FLSA

The second part of the FLSA fairness inquiry is whether the agreement furthers the FLSA's implementation in the workplace. *Howard*, 197 F. Supp. 3d at 777. Except for overly broad provisions in the Release Section A and Subsection 1, I conclude the Settlement Agreement does not frustrate the FLSA's purpose. Accordingly, I respectfully recommend that the Settlement Agreement be approved except for those overly broad provisions.[1]

---

[1] Although the Settlement Agreement for Plaintiff individually contains an overly broad waiver, the release waiver on Class Members' checks contains appropriate language tailored to the claims raised in this litigation. The Check Release Language states, "I understand and acknowledge that by cashing or depositing this check, I will be forever waiving and releasing (i.e., giving up) any and all claims under the Fair Labor Standards Act ("FLSA"), 29 USC §§ 201 et seq,, as well as any state and/or local wage and hour and common law claims related to unpaid wages, benefits, or any claim related to my compensation that were brought or could have been brought in Tommy Pham et al. v. QuadGen Wireless Solutions, Inc., CA No. 2:17-cv-02894-LDD." (Settlement Agreement at Exhibit 2, ECF No. 45). The language is narrowly tailored to Plaintiff's alleged unpaid wages claim and does not frustrate the FLSA. *See Bettger v. Crossmark, Inc.*, 2015 WL 279754, at *9 (M.D. Pa. 2015) (discussing that "[d]istrict courts reviewing proposed FLSA settlements may require litigants to limit the scope of waiver and release claims provisions to 'claims related to the specific litigation[.]'" (internal citations omitted)).

Courts in this Circuit have declined approval of overly broad waiver provisions included in FLSA settlement agreements. In *Howard v. Philadelphia Housing Authority*, the court declined to approve a waiver provision that released "any and all claims," reasoning that "[t]hese broad terms, for which the parties seek judicial approval, exceed the legal basis of Plaintiff's Complaint (i.e., wage and hour statutory protection) as well as the factual basis of her Complaint." 197 F.Supp.3d at 779. The court opined that approval of the "any and all Claims" waiver provisions would risk a waiver of the plaintiff's "other statutorily protected rights" such as rights under Title VII and the Civil Rights Act. *Id*. The court concluded that judicial endorsement of the waiver of those other statutory rights "exceeds the court's judicial approval role under the FLSA." *Id*. at 770-80.

Similarly, in *Kraus v. PA Fit II, LLC*, the court declined to approve an "extremely broad" waiver of claims which "preclude[d] Plaintiff from raising 'any and all' claims she might have against Defendants arising from a laundry list of charges, including but not limited to, back pay, discrimination, retaliation, harassment, 'any and all tort Claims or contract Claims,' as well as violations of '*any* federal, state, or local fair employment practices or civil rights laws or ordinances.'" 155 F.Supp.3d at 532-33. The court concluded that the overly broad waiver of claims "impermissibly frustrates the implementation of an otherwise fair and reasonable settlement." *Id*. at 533 (quoting *Bettger v. Crossmark, Inc.*, 2015 WL 279754, at *9 (M.D. Pa. 2015) (discussing that "[d]istrict courts reviewing proposed FLSA settlements may require litigants to limit the scope of waiver and release claims provisions to 'claims related to the specific litigation'" (internal citations omitted))).

In Plaintiff's Complaint, he sought recovery from Defendant for alleged unpaid overtime wages under the FLSA and North Carolina Wage and Hour Act. (Pl.'s Comp., at ¶ 1, ECF No.

16

1).  Here, the release and waiver of claims in Release Section A and Subsection 1 of the Settlement Agreement provides Plaintiff waives and releases "any and all . . .claims . . .arising from his (former) employment with QuadGen . . . from any and all wage and hour claims, misclassification claims, per diem claims, and/or any claims premised upon employment status, whether or not they were or could have been asserted in either case."  (Settlement Agreement at 2-3, ECF No. 45).

> By way of example only (and without limitation), the Claims released by Representative Plaintiff Pham herein include: all claims under the Fair Labor Standards Act ("FLSA"), 29 USC § 201 et seq.; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.; the Civil Rights Act of 1871, 42 U.S.C. §1981; the Civil Rights Act of 1991; Section 503 and 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 et seq.; the Americans with Disabilities Act, 29 U.S.C. §§ 12101 et seq., the Family and Medical Leave Act, 29 U.S.C. §§ 2601 et seq., the Employee Retirement Income Security Act, 29 U.S.C. §§ et seq., the Equal Pay Act, 29 USC §§ 206(d) et seq; the Lilly Ledbetter Fair Pay Act of 2009 ("LLFPA"), 42 U.S.C. §2000e-5(e)(3)(A); all other legally waivable claims under any federal, state or local statute, regulation, or ordinance, all claims based upon any express or implied contracts, all common law claims now or hereafter recognized, and all claims for relief, including without limitation, minimum, overtime or other wages, retaliation damages, unpaid costs, penalties (including, but not limited to, late payment penalties, wage statement or other record keeping penalties, and meal or rest break penalties), wage deductions, spread of hours pay, premium pay, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, and equitable relief.  However, nothing released herein shall apply to any claims for damages arising out of personal injuries.

(Settlement Agreement, at 3, ECF No. 45).

   I recommend the District Court disapprove the overly broad provisions that waive claims unrelated to the instant FLSA- and wage-claim litigation.  Similar to *Howard* and *Kraus*, Release Section A and Subsection 1 of the Settlement Agreement are overly broad waivers that exceeded the factual and legal bases of Plaintiff's Complaint.  *Howard*, 197 F.Supp.3d at 779-80; *Kraus*,

155 F.Supp.3d at 532-33.  As the *Howard* court noted, Court approval of the "any and all" waiver provision is inappropriate because "the Court risks judicially endorsing a waiver of Plaintiff's other statutorily protected rights," and "such judicial endorsement exceeds the court's judicial approval role under the FLSA."  *Howard*, 197 F.Supp.3d at 779-80.  Here, the waiver specifically extends to "Plaintiff's other statutorily protected rights" and frustrates the FLSA's purpose.  *See, e.g., Bettger*, 2015 WL 279754, at *9 ("applying the exacting scrutiny mandated by the FLSA, the court is compelled to find that such a broad waiver impermissibly frustrates the implementation of an otherwise fair and reasonable settlement"). Therefore, I conclude the waiver that extends beyond FLSA-based claims should not be approved because "such judicial endorsement exceeds the court's judicial approval role under the FLSA."  *Id.* at 779-80.

Accordingly, because Release Section A and Subsection 1 include overly expansive waiver provisions that extend beyond Plaintiff's FLSA based claims, I respectfully recommend that the District Court decline to approve those provisions.  *See Rubbo v. Peoplescout, Inc.*, No. 16-4903, 2017 WL 2010311 at *4 (E.D. Pa. 2017) (declining approval of "overly broad" release provision going beyond factual and legal basis of the complaint because it frustrates the FLSA's purpose and "the Court has no way to evaluate the value of the claims being released"). Excluding those overly broad provisions, I recommend approval of the Settlement Agreement and dismissal of the action with prejudice.

## V.     CONCLUSION

For the foregoing reasons, I conclude that the Settlement Agreement is a fair and reasonable compromise of a bona fide dispute which furthers the implementation of the FLSA, except for Release Section A and Subsection 1 which include overly broad waiver of claims.

Accordingly, I respectfully recommend that the District Court approve the Settlement Agreement, except those Paragraphs in the Settlement Agreement that exceed the factual and legal bases of Plaintiff's Complaint. (Settlement Agreement, at 2-3, ECF No. 45).

Therefore, I make the following:

## RECOMMENDATION

AND NOW, this __3RD__ day of March, 2020, I respectfully RECOMMEND that the Parties' Joint Motion for Approval of Settlement be GRANTED as outlined in the Report and Recommendation. I respectfully recommend that the District Court approve the Settlement Agreement except for Release Section A and Subsection 1 of the Release and Settlement Agreement. I further recommend that the Court dismiss this action with prejudice.

BY THE COURT:

   /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge